10121 Georgia Electric, The City of Sandy Springs v. The City of Sandy Springs, Georgia Mr. Britt. Thank you, Your Honors, and may it please the Court. I'm Russell Britt, and along with Brad Carver, represent the Security Alarm Industry Plaintiffs Appellants in this matter. The question before the Court today is simple, whether a municipality can penalize and restrain an entity that has no control over the conduct made unlawful by the municipality's ordinance. And the answer to that question is clearly no. The well-pleaded facts demonstrate that although alarm companies do provide some monitoring services, they have no control over the activation of an alarm system at a user's site. Alarm systems are owned and leased and unilaterally controlled by the alarm user. And alarm companies do not have any sort of master-servant relationship or principal-agent relationship with the alarm users. Therefore, alarm companies are simply not in a position to supervise or control the conduct of alarm users. Nonetheless, the for the false alarms caused by the end-users. And as amended, the City's ordinance now fines $250 for the first false alarm, $500 for the second false alarm, and then $1,000 for each false alarm thereafter. And it's important to note, after the third false alarm and a 12-month period, the City terminates any and all response services to the alarm site. And appeal the fines. The fines are imposed regardless of whether the alarm company can show that it absolutely had no control or no master-servant or agency relationship over the end-user. So in light of these well-pleaded facts, the District Court erred for the following three reasons. First... Let me ask you, is control really the test? Isn't the City entitled to think of the fact that maybe they can exert some influence on the people who they've contracted with? Yes, Your Honor. At a bare minimum, control is the proper test because at some point, there's got to be some connection between the person that is penalized and the entity that actually caused the conduct. And in fact, that's the basis behind vicarious liability. The United States Supreme Court has... Who makes the call to the police? The underlying client or your clients? Your Honor, oftentimes there's a contractual obligation for the alarm company or the third party monitoring service to make the call. Right, but it's your client or your client's delegated, contracted agent that makes the call? That's correct. So you have, in some sense, to the extent control is required, you have control there. You don't have to make the call, right? Well, the alarm company certainly does... I mean, if you were satisfied that a customer was repeatedly sending you false alarms, you had a long history of this, you could cut them off or just refuse to make the call, couldn't you? No, Your Honor, not under the contractual relationship on the services and the monitoring side. But that's not the issue at play here. The issue at play... But you say the issue is control. I'm simply asking whether by putting the onus on the alarm company, the city is not effectively requiring you to enter into arrangements with your clients of the kind or species where you're monitoring what they're doing. You're just not a passive vessel through which you just hit the buzzer and you say, go over to the house. If you know somebody is repeatedly submitting false alarms, you're not without power to act, are you? You would be with some power, but each act is an independent act and you just simply don't know whether it's false or not based on the circumstances. But the point is, at some point you've got to have some sort of connection, a responsible relation between the person that's penalized and the conduct itself. And that again goes back to the point about having... Well, but if they find you or throw out the potential of finding you, does that not have the rational possibility of yielding, writing contracts that are not quite so broad? And focus more particularly on this problem of repeated false alarms? No, Your Honor, because the contracts involved are separate and distinct issue regarding the monitoring, not the unlawful conduct here, which is triggering a false alarm. And it's an analogy that you can compare to the red light camera cases, where this court has time and time again recognized that municipalities can impose red light camera fines on the owner of a vehicle, even if the owner of the vehicle wasn't driving. Let me put the question this way. Could you not impose a cost on the customer for a series of false alarms? Forget that this contract did not do it. Couldn't you do that? Hypothetically, it probably could. Wouldn't be hard, would it? Wouldn't be hard to say that all of your client customers, if you submit so many false alarms, we're going to tax you in a certain way, we're going to impose a cost, we're going to pass on a cost, or something like that, that would have the effect of maximizing the interests the State asserts or the City asserts? But, Your Honor, again, the problem with that is the fact that there's a lack of a responsible relation. And again, it would be the same as if you're saying, oh, well, the dealer, the leaseholder of a vehicle has a contract providing you full ownership of the vehicle for a certain term, and therefore, you should be able to influence that driver. Has any case extended that responsible relationship doctrine to a civil context like this? Yes, Your Honor. The Fifth Circuit and Hudson V. Texas Racing Commission in 2006 recognized a responsible relation with regards to administrative penalties assessed by the Commission for the owner of a horse trainer, or, I'm sorry, the owner of the horse. The owner, you know, tried to argue that he wasn't in control, but like the owner of a vehicle, at the end of the day, the horse is still in its possession. That's unlike the situation here where the owner is the alarm company, nor does the alarm company have any control over that. And again, it goes back to the analogy. It would be the same situation as a leaseholder of a vehicle. There has never been a court that has extended a red light camera fine that far up the line. The City cites the Idris case in Chicago, but based on the factual allegations that the plaintiffs have provided and all favorable inferences going to them, our analogy actually holds true. It seems to me the Idris case, or Idris, if you say, in the Seventh Circuit is a harder case than our case. Your influence over these owners, it seems to me, is at least as extensive as the owner of the automobile there was over whoever was driving his car. You can, as my brother has been suggesting, you can charge, you could pass on these charges. Every time you got a charge fine, you could pass it on to the owner, and that would obviously give the owner an incentive to be more careful and reduce alarms. You could even cut him off completely and say, I'm not going to serve you anymore. It seems to me the Idris case is squarely on point. Well, it's not because the Idris case expressly noted that the fines didn't extend to the owner. It wasn't willing to give him that charge. The manufacturer is in a much more remote position than the alarm company. Well, Your Honor, it's important. As is the dealer. When the dealer leases a car, the lessee is, in effect, the owner of the car for all practical purposes. A lot of people lease instead of own. Right. Your Honor, though, it's important to note that we're at the 12B6 pleading stage right now, and so that standard is you've got to take our well-pled facts and accept them as true in our favor, and the facts that the court is hypothesizing on simply aren't in the record at this stage. Are you saying that the question of control is a factual question? I'm saying, yes, to a certain extent, control is a factual question, and we've alleged facts that we just simply don't have that control. And the plaintiff's recognized the very high standard of the rational basis test, but that is an evidentiary standard that can be decided on summary judgment. And cases recently that we've cited in our brief have had— What specific allegation of the complaint says you have no influence? Well, Your Honor, the allegations we discuss is the fact that we recognize that there are a few times where we could possibly be the one that caused the false alarm. And so we note that and accept that there could be a situation where we could be fined. However, that's only less than 5 percent of the time. I mean, what allegations do you assert that we have to accept at this stage which would  Yes, Your Honor. So we allege specifically that while we provide the monitoring service, we have no control over the actual triggering or the activation of the alarm system itself. And we also allege that we have no master-servant or principal-agent relationship. None of those are relevant to your influence. You cannot have a master-servant relationship. You cannot actually be responsible for. You can't control. That's conceivable. But you certainly can influence. Well, Your Honor, if the test was only whether you had influence and no responsible relation, then that would basically allow the city to fine anybody anytime it wants to, because you can always argue that somebody has some sort of influence. You could argue that a neighbor has influence over his next-door neighbor to keep his music down, right? And so you could certainly say, okay, well, we're going to fine you if that neighbor keeps having his music high. But, of course, no court would agree that that would pass rational basis. And the reason why is because at bare minimum, in order to cause vicarious liability, you have to have that responsible relation. You have to have some sort of connection between the person that's fined. But there is connection. There is some sort of connection. There is some sort of influence. You can do that by contract with your customers, can't you? No, Your Honor. And that's not what we allege. We allege that that's not possible, because once the information, once the equipment is provided to the alarm user, it is theirs. It's within their control. They pay a monthly fee, do they not? That again is for the service of monitoring. That's not for the equipment triggering itself. Can you charge them more money if there is a pattern of false alarms from a customer? Your Honor, that would be possible, but again, that's outside the pleadings at this time. Well, I understand that. But as I understood rational basis review, the question is, could I come up with some reasoned basis to explain what the City of Shady Springs is doing? And wouldn't it be reasonable to say that you have a whole lot of influence over how you structure your relationship with your customers? A, you can charge them if they submit false alarms or there's a pattern or something like that. B, you could cut them off from coverage completely, couldn't you? Your Honor, I mean, you could put that in a contract and create that kind of relationship and influence over your customers. Might not be good business, but to the extent the City is looking to you to influence the behavior of the third party, the question is whether that's rational, not whether it's the most efficacious means, not whether it's narrowly tailored, but simply whether it's plausible. Isn't that how I have to look at this? Your Honor, and if I may, I see that I'm over. Please help me with this. Okay, absolutely. And yes, Your Honor, at some point you're supposed to do that, but again, that's at the evidentiary stage. And the cases cited in our brief, as well as cases as recently as the travel ban litigation in the District Court of Maryland, has talked about that extensively in International Refugee Assistant Project v. Trump, that's 373 FSUP 3D650. And there the Court looked at these issues and noted the fact that the evidentiary standard is certainly a very steep hill for the plaintiffs to climb. But nonetheless, at the 12B6 stage, you've got to accept the allegations as true and provide all favorable inferences in the favor of the plaintiffs. And here, we don't allege those types of situations where we could possibly do that. I notice that I'm shifting, if it's all right, to the procedural due process question. And your standing, you haven't argued that. Do you still think you have standing? Yes, Your Honor, we absolutely have standing. And the case that the panel brought to the party's attention confirms that. The Worthy case, in fact, we made those arguments against the District Court. And how do you square Worthy with the binding prior panel opinion in Granite State? Sure. So this Court in Worthy held that a party has standing to bring a procedural due process claim where the party has been penalized for violating an ordinance and is challenging the ordinance as a whole, not just a portion of the procedures. And that's exactly what we have here.  Therefore, we have an injury in fact, the fine, and we have a causal connection. That is the municipality's ordinance. And, of course, we can come to court. I don't see in your complaint where you allege, as they did in Worthy, that the whole ordinance was unconstitutional due to the appellate procedures being inadequate. Your Honor, we do. We allege that the ordinance. What paragraph? I will certainly find the specific paragraphs for the rebuttal. But, Your Honor, the whole crux of our complaint is the fact that we allege that the ordinance fails to satisfy substantive due process on the merits. And then we also allege that the entire appeals process is inadequate. And the reason how you can reconcile the Worthy case with Granite State is simple. In Granite State, the plaintiff didn't have an injury in fact. The specific injury that they alleged was during the appeals process or the decision making process on the permit, the decision maker could take as much time as he wanted to indefinitely. And, however, there, though, the evidence showed that the permit was denied the same day that it was submitted. So, therefore, the plaintiff in Granite State had no injury. And that's why the Court found that there was no standing. Of course, the plaintiff there challenged the restrictions in general and the specific section detailing the permitting and the appellate process. There was a general attack and a specific attack. And they claimed that because the regulation allowed unlimited time to grant or deny an appeal, it was constitutionally defective. And our Court said no constitutional standing where the regulated party did not at least attempt to utilize what they classified as an insufficient appellate procedure. How do I get around that? There's no question Worthy comes at the whole issue of standing in a different way. But am I not bound by what Granite said? Your Honor, you are bound by what Granite said, but I still think the standing issue in Granite goes back to the fact that there was an injury in fact. And at the end of the day, they found that they didn't have standing with the specific procedure that they claimed was defective. Here we've got a situation where we've alleged that the procedural process is inadequate altogether. And the reason why is because the plaintiffs can provide evidence that they had no control over the false alarm, they had no responsible relation to the conduct that caused the unlawful penalty or fine and violation, and yet still the fine would be upheld. So therefore, there's no process whatsoever. I would just ask you when we hear from your other colleague to think about my question, which is, tell me where in the complaint you alleged that you have no influence or control over your customers. Thank you. Thank you. Ms. Main. May it please the Court. My name is Dana Main, and I have the pleasure of representing the City of Sandy Springs in this action. Having some, I'm going to try to address some of the issues that appear to be important to the Court. So, Justice Marcus, I will tell you that there is no allegation in the complaint that the alarm company does not have any legitimate distance from the false alarms. Your Honor, it is significant that this ordinance only applies to situations where there is a call from the alarm company. It does not do anything, if you're in your house in Sandy Springs and you call 9-1-1, this ordinance does not apply. If you are having, if you have a flat tire and you call 9-1-1, this ordinance does not apply. Well, doesn't this ordinance apply even when they call up and cancel it before anything has happened? Nothing has been sent out? Or no? Yes. Yes, Your Honor. It does. As it's written, it can apply in that situation. That's a very factually-based situation that we don't even know if that has existed. There's not. But it could. And the point is that just because you have actually dispatched a fire truck, say, and got all the folks up in the middle of the night and put on all their clothes and sent them, yes, there is a cost. There's also a cost for the city having to man that center, the 9-1-1 center. There is no way. They're going to man it anyway. Somebody's got to be sitting there in case somebody calls, right? Yes, Your Honor. But if you've got 100 calls in a night versus 10 calls in a night, you're going to have to staff that differently. You're going to have to staff your command center differently. So, Your Honor, there is a, in and of itself, there is a legitimate reason for the ordinance and a legitimate reason for the ordinance as a whole and a rational basis that goes  Wait a minute. A call comes in and seconds later, they call back and say, Oops, we know it's a false alarm now. Don't just scratch that call. So nobody's gone out. No action's been taken on it. You still going to fine them? Your Honor, I, as in practice, I don't know if that's how the city applies the ordinance, Your Honor. Excuse me, Ms. Main. I thought the district court found, based on the definition, quote, false alarm, that there was not a, quote, false alarm unless there was a dispatch. Yes. Yes, sir. There is the, and that was a, the district court  Your Honor, the district court went through the two definitional and applied the definitions. But does that not answer my sister's question? Your Honor, I believe, Your Honor, I believe that it would. But in terms of how the ordinance in practice, because we don't have that allegation about these plaintiffs specifically, this is not an as-applied other than two of them received fines. We don't know if those fines were related to an immediate dispatch. I do not know in practice if that's what happens if there is a, if there is a charge in that regard. It, I, yes, yes, Your Honor, Judge Anderson, that is what the trial court had decided. But even without getting to that point, you still have a constitutionally valid ordinance, an ordinance that passes 14th Amendment substantive due process. And with reference to, and I can jump over to the control issue. And we launched right into a discussion about this responsible relation. And it has been applied in somewhat hybrid criminal slash civil cases. But it has only been applied, it has never been applied as an element of a substantive due process claim. It has only been applied to public welfare claims. And as the Supreme Court in Staples v. United States 511 U.S. 600 had said, a public welfare ordinance is when you have a defendant who knows that he's dealing with a dangerous device of a character that places him in a responsible relation to a public danger. And it is only used to excuse the mens rea element, the knowing element, in, in that context. So I would say rather than, I mean, the first question is, does this responsible relation have any role in this discussion? And, and, and I believe that there is not any case law that says, yes, it needs to be part of the discussion. But the second part, then, is if you said, okay, fine, it has to travel through, this ordinance has to travel. Before you get to that second part, I'm not sure, I can't remember that I've read either the Fifth Circuit Hudson case or the Sixth Circuit Hodges case. But my law clerk said that the Fifth Circuit Hudson case did not extend it to the responsible relationship to a case like this. And that the Sixth Circuit merely said, if it's a situation which would be a responsible relationship and, therefore, apply in a criminal context, it's a for sure in a civil context. Is, is my law clerk correct about those two cases? Your Honor, I would never dispute your law clerk whatsoever. Oh, I would not be quite so quick to make that concession, counsel. At this moment, Your Honor, I do not dispute anyone's law clerk. But, but, Your Honor, it is, it is true that some cases have, have launched into the in, in a situation such as ours. And I would posit that it becomes very dangerous. Was the fine at issue in that case a civil fine or was it a quasi-criminal fine? And are you talking about? In Hudson. In Hudson, Your Honor. In, in Hudson, that, that was with the horse racing. And, Your Honor, it was a quasi-criminal case, Your Honor. Or, or, it doesn't, the, the opinion does not have it as some of the other cases. It's not, you're, you have a, a firearm that's sawed off and you're not allowed to have it without, you know, and, and it's not the same type of crime as some of the other public welfare crimes have been, that, that have been reported. But, but, Your Honor, it's still an extension of the substantive due process jurisprudence. And, and, Your Honor, even if we, we assumed, as, as, as those two cases have, that it applies here, again, you cannot sell someone a device, charge them a fee, and then say, I have nothing to do with it. Even though I pay the people to make the call, even though you pay me to pay the people to make the call. This is not a situation where you've got a next door neighbor who makes the call for you. Because you call up and say, and, and I don't remember what the, the, the, there's a name for these false 911 calls, when you have somebody making a false 911 call so the SWAT team will come. This is not, for, for, for these plaintiffs to say they are not connected, if they want to not be connected, there is a sure way to not be connected, don't sell the product and don't sell the monitoring service. Then you're not connected. But this ordinance only applies to the call that comes from the monitoring company that, then, that has been triggered by an alarm. Triggered by an alarm by a person who is totally different. I mean, if you're talking about a company, the alternative that they just go out of business doesn't sound quite reasonable. The question is whether they have any control at all about whether the person who sets off the alarm, they, of course they're monitoring, that's part of what they do under the contract. But the alarm is set off by somebody totally independent. And do they have any control over the person, and let me ask you something, why wouldn't the city just tackle, whatever, assess it against the person who sets off the alarm? Is it just easier administratively to do it through the monitoring company? Your Honor, I can answer that not in the record, but as a resident of, used to be City of Atlanta that has an alarm ordinance, and after this case started, I became a resident of Sandy Springs with an alarm ordinance, yes, Your Honor. And in City of Atlanta finds you, the user, or they used to, in Sandy Springs, and it is, they're two different mechanisms. They are, the substance, it is a legislative decision that the City of Sandy Springs made. And their legislative— The question is whether it is rational and reasonable to put the onus on the alarm companies rather than on the customer. The city can do it either way. Our question under rational basis scrutiny is simply whether it is reasonable administratively to put the burden on the alarm company. Well, and Your Honor, I would go— Is it? Is it reasonable? Your Honor, there has to be a conceivable, reasonable basis for doing it. And yes, I believe that it is reasonable. And we've got the reasons, so Judge Rothstein, you have your question about what can the alarm company do. Well, the alarm company can come into my house, but the alarm company, when the alarm company comes in, I need to be trained. I need to, the alarm company needs to go and make sure the sensors in the doors and those all work. The alarm company needs to train me. I know that when the alarm company comes to my house and trains me, I need to train my husband and children because the alarm company is going to get mad at me if penalty-wise or some— I expect that if my alarm goes off and they're false alarms, that I'm going to hear from my company. As a user, I expect that. They have the ability to train me. They have the ability to require that I replace my batteries every whatever the timeframe is when your batteries start triggering. They have the ability to make sure or to try to ensure as best possible that I have best practices in my house. They are in the position, because they have thousands of customers, as they've said, they are in the position to be able to create that best practices and to be able to train me how to use my system. So, they have more ability to do that in their control than a one-by-one-by-one resident in the city of Sandy Springs. So, in terms of is there any conceivable, rational basis for this? Absolutely. Is there the appropriate nexus between the legislative scheme and what the city has been — is the goal? And I'll point out, of course, this is not a situation where we have to just put on our thinking caps and try to figure out what the goal could be. It is — it's in the ordinance. It's in the beginning of the ordinance, Section 1834, of the purpose of the ordinance. It is in the resolution that adopted the fee schedule. It sets out the thousands and thousands of dollars that the city has incurred because of false alarms. So, we don't have to guess. We don't have to conceive. We don't have to do anything. It is right there in black and white. And that nexus is certainly there. Let me ask you on the other issue in just the moment we have left. There's a procedural due process claim as well. And the question is, how do we review it for standing? Are we bound by granite state outdoor advertising versus the city of Clearwater, where the focal point was on the flawed process itself, but since they didn't appeal, there was no injury in fact, the injury said to adhere in the flawed process? Or do we apply worthy, which looks at the question in a very different way, and says there was a fine, and that is a palpable injury? Your Honor, I don't — If we look at it through the fine perspective, can we establish causation here based on the sufficiency of the pleadings? Your Honor, your last question to me answers the question about what do we do with granite state and worthy. I do not believe there's conflict between those two. I believe that you've got, yes, we have an injury in worthy. We have an injury in this case that we did not have in granite state. But what — so we have the injury, but do we have that — the causation between what they're challenging and the injury? And in this case, Your Honor, and I understand that you're going — you had asked the plaintiff about this, but there is no doubt whatsoever that the plaintiffs in this case did not seek to strike the entire ordinance. They — that's — that is the difference. Worthy said your whole scheme is unconstitutional and should be struck because of the deficient process. And again, we're not getting into the merits of it, which is something that — and I'd be happy to do that if the Court would like. But the — in terms of the ordinance, there is no doubt this is in — in the complaint, in the amended complaint, it is count 2, and on paragraph 84, very specifically, the plaintiffs — plaintiffs say that they're asking for an injunction as to the termination provision and for the civil penalty. There's a lot more in that ordinance, and they're not seeking to strike the entire ordinance. And in terms of the appeal process, I will point out to the Court that — and this gets into somewhat of going back to a Granite State versus City of Clearwater issue, whether facial or as applied, virtually all of the plaintiff's complaint about the procedural due process in this case is, well, we know what they say, but that's not really what they're going to do. And I didn't count the number of times, but in the procedural due process, they talk about in practice, in practice. Well, it says this, but in practice, they're not going to listen to this. They're not going to take this as a reason in practice. Well, for the in practice analysis to be right, you have to have somebody who went through the practice. And we don't have that in this case. So you have to — if you're going to complain that, oh, the — the City appeal process, you — they say 10 days isn't long enough. Well, we don't have you having tried 10 days and then having had a problem at the hearing officer aspect. They have allegations — they have allegations in there, but they don't have anything about what these plaintiffs did. I think we have your case. Thank you. Thank you, Your Honor. Mr. Brett. Thank you, Your Honor. And I'd like to backtrack real quick to further respond to a few questions that were asked of me initially. First, to clarify the control issue. Control ultimately is a legal conclusion, but we — the question of control is gleaned from the factual allegations. And we believe here the allegations do show the lack of that control. And, Judge Marcus, your question on specific allegations regarding influence, paragraph 17 discusses that and the situation and the fact that, based on the relationship, there's no way to supervise, direct, or control the customer's actions. And so that — the favorable inference from that is we have no way to influence that end user. You know, to make another analogy, it would be the same as an OnStar system on a vehicle. That's a monitoring service that you contract for. And prior to driving off the lot with your vehicle, OnStar gets on the phone with you and trains you on how to use the system, on how to report an issue with your car, how to report when the car has been in an accident so that they can report it to the police. Well, certainly no court's going to uphold a fine on OnStar if a vehicle runs through a red light and gets in an accident and OnStar reports the accident. Or if OnStar gets called because the individual thinks that their tire is flat, and so OnStar calls a unit and the unit comes out and determines it's not flat, they're simply there. That example shows there's no influence over the actual conduct that's considered unlawful. And that's the situation we have here. The alarm company has no influence on the conduct, i.e., the false alarm as defined under the ordinance. Going back to the substantive due process, the Court raised a very good point. In addition to the point on the responsible relation deals with the entire ordinance and the fact that the legislative means don't comport with the purported purpose. Because the purpose of the ordinance, as stated, is that they're trying to divert public resources. But we've factually alleged at least two situations where no public resources are being used. And therefore, it's just an opportunity for them to generate money. Are you attacking the entire ordinance here? Yes, Your Honor. Because the basic – Because I confess to you, I didn't read it that way, as a general attack on the entire ordinance as opposed to specific pieces of it. Did I misapprehend that? No, Your Honor. I mean, the whole purpose, the whole scheme is based on a concept that the city is going to find an individual that has no vicarious relationship with the conduct. That's what we're challenging here. That is the whole basis of the ordinance. The city, that's the only reason why they've implemented the ordinance, is to go after a third party. Thank you. Thank you, Your Honor. Thank you, sir. I'm fine. Let's go ahead and finish. Absolutely. Next case is Cantrell v. McClure.